**UNITED STATES COURT OF INTERNATIONAL TRADE**

|  |  |  |
|---|---|---|
| VIETNAM YUZHAN PACKAGING TECHNOLOGY COMPANY LIMITED, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| UNITED STATES, | ) ) | Court No. 26-01225 Judge Unassigned |
| Defendant. | ) ) ) | |

**COMPLAINT**

Pursuant to Rule 3(a)(2) of the Rules of the United States Court of International Trade, Vietnam Yuzhan Packaging Technology Company Limited ("Yuzhan" or "Plaintiff"), by and through its counsel, alleges and states as follows:

**JURISDICTION**

1.    Plaintiff brings this action pursuant to, and in accordance with, section 516A(a)(2) of the Tariff Act of 1930, as amended (codified at 19 U.S.C. § 1516a(a)(2)), contesting the final determination of sales at less than fair value in its antidumping duty ("AD") investigation of Thermoformed Molded Fiber Products From the Socialist Republic of Vietnam (Case No. A-552-845.) See Thermoformed Molded Fiber Products from the Socialist Republic of Vietnam: Final Affirmative Determination of Sales at Less Than Fair Value, 90 Fed. Reg. 46791 (Sep. 30, 2025) ("Final Determination"), and accompanying Issues and Decision Memorandum (Sep. 24, 2025) ("IDM").  This Court has jurisdiction over this matter under 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2).

**Court No. 26-01225**                                                    **Complaint**

## STANDING

2.      Plaintiff, Yuzhan, is a foreign producer and exporter of the merchandise examined in the Final Determination that are contested here.  Plaintiff therefore is an interested party within the meaning of 19 U.S.C. § 1677(9)(A).  Plaintiff actively participated in the administrative review through submission of factual information and written argument and thus is an interested party to the proceeding as defined in 19 C.F.R. §351.102(b).  As an interested party that actively participated in the underlying administrative proceeding, Plaintiff has standing pursuant to 19 U.S.C. § 1516a(1)(d) and 28 U.S.C. § 2631(c).

## TIMELINESS

3.      The subject Final Determination, which is being challenged herein, was published in the Federal Register on September 30, 2025.  See Final Determination.  The antidumping duty order was published on January 27, 2026. Thermoformed Molded Fiber Products From the People's Republic of China and the Socialist Republic of Vietnam: Antidumping Duty Orders, 91 Fed. Reg. 3431, (Jan. 27, 2026) ("AD Order").  On February 26, 2026, within 30 days after the AD Order was published in the Federal Register, Plaintiff filed a summons to initiate this action.  See ECF No. 1.  Accordingly, this action was commenced within the period specified in 19 U.S.C. § 1516a(a)(2)(A)(i)(II).  This Complaint is being filed within 30 days of the filing of the summons.  Therefore, according to the provisions of 19 U.S.C. § 1516a(a)(2)(A) and Rule 3(a)(2) of the Rules of the U.S. Court of International Trade, this action has been timely brought.

## STANDARD OF REVIEW

4.      This Court reviews actions concerning determinations issued by Commerce brought under 19 U.S.C. § 1516a(a)(2) to determine whether they are "unsupported by

**Court No. 26-01225**                                                        **Complaint**

substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

## PROCEDURAL HISTORY

5.      On October 8, 2024, the United States Department of Commerce ("Commerce") received an antidumping petition ("Petition") alleging that imports of molded fiber products from Vietnam were being sold for less than fair value ("LTFV").

6.      Commerce initiated the LTFV investigation. <u>See</u> <u>Thermoformed Molded Fiber Products from the People's Republic of China and the Socialist Republic of Vietnam: Initiation of Less-Than-Fair-Value Investigations</u>, 89 Fed. Reg. 87551(November 4, 2024) ("Initiation Notice").

7.      On November 7, 2024, Commerce issued questionnaires to eight Vietnamese exporters or producers of the merchandise under consideration identified in the Petition with complete contact information seeking information regarding the quantity and value of shipments of molded fiber products ("subject merchandise") from Vietnam during the period of investigation ("POI").

8.      On November 18, 2024, Yuzhan submitted its response to the questionnaire regarding the quantity and value of sales of subject merchandise. On December 5, 2024, Yuzhan submitted comments requesting that Commerce choose two mandatory respondents, including Yuzhan.  On December 20, 2024, based on the responses to the Q&V questionnaires, Commerce determined to limit its examination of respondents in this investigation to a reasonable number of exporters or producers and selected Yuzhan as the sole mandatory respondent in this investigation.

9.      Between January 21 and February 12, 2025, Yuzhan submitted timely responses

to sections A, C, and D of Commerce's AD Questionnaire, i.e., the sections relating to general information, U.S. sales, and factors of production used to determine normal value, respectively. From January 2025 to May 2025, we issued supplemental questionnaires to, and received timely responses from, Yuzhan.

10.     On May 6, 2025, Commerce published in the Federal Register its preliminary affirmative determination in the LTFV investigation wherein it calculated a weighted-average dumping rate for Yuzhan of 3.86 percent.  See Thermoformed Molded Fiber Products From the Socialist Republic of Vietnam: Preliminary Affirmative Measure, 90 Fed. Reg. 20153 (May 12, 2025) ("Preliminary Determination"), and accompanying Preliminary Decision Memorandum, (May 6, 2025) ("PDM").  In the Preliminary Determination, Commerce compared Yuzhan's U.S. prices to normal value using the average to transaction ("A-T") method of comparison rather than the average to average ("A-A") method after applying its *Cohen's D* differential pricing analysis.  See PDM, at 20-23.  Had Commerce used the A-A comparison method, the overall weighted-average dumping rate for Yuzhan was zero percent.  See Memorandum to the File From Zachary Shaykin: Yuzhan's Preliminary Analysis Memorandum, page 7, (May 6, 2025).

11. Commerce conducted its on-site verification of Yuzhan's responses from June 23-26, 2025.  See Memorandum to the File: Verification of the Sales and Factors of Production Responses of Vietnam Yuzhan Packaging Technology Company Ltd. in the Antidumping Duty Investigation of Thermoformed Molded Fiber Products from the Socialist Republic of Vietnam, August 14, 2025 ("Verification Report").  Therein, Commerce explained that at the start of verification, Yuzhan company officials presented minor corrections to its responses where it incorrectly reported the wrong production quantities in the allocation of packing materials due to a copy and paste error. Id., at 3.  While Commerce accepted other minor corrections, Commerce

- 4 -

**Court No. 26-01225**                                                          **Complaint**

did not accept the packing minor correction presented by Yuzhan as a minor correction. Id., at 3-4. However, the correction to the packing information was verified in the course of the verification when Commerce verified the packing materials.  See Verification Report, page 40, and Exhibit VE-28, at page 26.

12.  On August 21, 2025, Yuzhan and the Petitioner submitted case briefs contesting aspects of Commerce's Preliminary Determination.  On August 29, 2025, Yuzhan and the Petitioner submitted rebuttal briefs.

13. On August 22, 2025, Yuzhan submitted a revised FOP database in response to Commerce's request for the FOP database incorporating the minor corrections accepted at the verification.

14. On August 25, 2025, Commerce issued a post-preliminary determination analysis of Yuzhan's antidumping rate after changing its differential pricing analysis.  See Thermoformed Molded Fiber Products From the Socialist Republic of Vietnam: Post-Preliminary Analysis for the Affirmative Determination, (Aug. 20, 2025) ("Commerce's Differential Pricing Post-Preliminary Analysis").  In the Post-Preliminary Analysis, Commerce announced in the that it has discontinued use of the Cohen's $d$ test as part of its differential pricing analysis based on recent decisions by the U.S. Court of Appeals for the Federal Circuit ("CAFC").  Instead, Commerce employed a new method for analyzing differential pricing in the U.S. sales and continued to use the A-T method in determining Yuzhan's antidumping duty rate.

15.  On September 2, 2025, Yuzhan filed a brief addressing Commerce's Differential Pricing Post-Preliminary Analysis arguing that Commerce's new differential pricing methodology is not in accordance with law.  Commerce received no other case or rebuttal briefs regarding Yuzhan's Revised FOP Database or Commerce's Differential Pricing Post-Preliminary

- 5 -

Analysis.

16. On September 24, 2025, Commerce signed the Final Determination.  In the Issues and Decision Memorandum accompanying the Final Determination, Commerce explained that the Commerce was using adverse facts available pursuant to 19 U.S.C § 1677e to determine Yuzhan's packing information incorporated into normal value stating that Commerce "was unable to verify the packing material FOPs by Yuzhan." See IDM, at 6.  Commerce made the change to the packing information reported by Yuzhan even though it did not receive any comments in briefing regarding how Commerce calculated packing in the Preliminary Determination.  In addition, Commerce continued to use the A-T comparison method in Yuzhan's antidumping calculation.

## ISSUES PRESENTED BY THE ACTION AND
## PLAINTIFFS' STATEMENT OF CLAIMS

17.    In the following respects, and for other reasons apparent from the record of the administrative proceeding, Commerce's Final Determination lacks a basis in substantial evidence and is otherwise not in accordance with law.

## COUNT ONE

18.    Paragraphs 1–17 are incorporated herein by reference.

19.    Commerce's calculation of Yuzhan's AD margin based on and A-to-T comparison method by applying its revised differential pricing analysis, including the two-percent difference test is contrary to law.  Commerce does not support how a two percent difference in prices of the comparison group is the best reading of the text of 19 U.S.C. § 1677f-1(d)(1)(B).  The Federal Circuit doubted that Commerce could satisfy the statute when (under a different test) it identified prices as differing significantly, even though the prices are "very similar, falling within a relatively small range."  See Stupp Corp. v. United States, 5 F.4th 1341,

1359.  The two percent "price difference" test cannot amount to the best reading of the statutory text.

20.    Accordingly, Commerce's adoption of the two percent "price difference" test is contrary to the language of 19 U.S.C. § 1677f-1(d)(1)(B) and is otherwise not in accordance with law.

## COUNT TWO

21.    Paragraphs 1-20 are incorporated herein by reference.

22.    The record demonstrates that the error in the originally reported packing allocation was due to a copy and paste error and that total quantity of packing materials consumed was accurately reported originally, but the data were only misallocated to the finished goods as a result of a copy and paste error. Commerce's determination not to accept Yuzhan's packing minor correction presented at the start of the verification was an abuse of discretion and not supported by substantial evidence.

## COUNT THREE

23.    Paragraphs 1-22 are incorporated herein by reference.

24.    Yuzhan's packing information presented at the start of verification was later verified by Commerce and the record possessed the correct information on page 26 of Verification Exhibit 28 of the Verification Report.  Thus, the record was not missing any information necessary for Commerce's calculation.  In order to invoke the facts available provisions under 19 U.S.C. §1677e(a)(1), the statute requires that "necessary information is not available on the record."  Because the necessary packing-related information was available on the record, Commerce had no basis to invoke 19 U.S.C. §1677e.

25.    Accordingly, Commerce's determination to apply facts available pursuant to 19

U.S.C § 1677e to Yuzhan's packing information was not in accordance with law.

## COUNT FOUR

26.    Paragraphs 1-25 are incorporated herein by reference.

27.    19 U.S.C. §1677e(a)(2) empowers Commerce to use "facts available" when an interested party (A) withholds information, (B) misses a deadline, (C) significantly impedes the proceeding, or (D) provides information that cannot be verified.  Commerce's determination that Yuzhan's behavior and actions in the investigation met any of these prerequisites to the application of facts available cannot be supported by evidence in the record.  Thus, Commerce's application of facts available is not supported by substantial evidence and is otherwise not in accordance with law.

## COUNT FIVE

28.    Paragraphs 1-27 are incorporated herein by reference.

29.    In determining the facts available with an adverse inference, Commerce selected the maximum per-unit consumption values of packing materials for the finished goods for which no packing correction was needed and applied those consumption rates to the finished goods for which a correction was presented.  Assuming for the sake of argument that information was missing from the record and that Yuzhan failed to cooperate in the manner described in 19 U.S.C. §1677e(a)(2), Commerce's selection of the appropriate facts available to use in place of such missing information was not supported by substantial evidence.

## COUNT SIX

30.    Paragraphs 1-29 are incorporated herein by reference.

31.    Commerce applied adverse facts available for unreported information relating to Yuzhan's purchases of semi-finished goods from Yuzhan's affiliate in China.  See IDM, at

Comment 6. Hereto, there was no missing information relevant to Commerce's calculation. Accordingly, Commerce's application of facts available was not in accordance with law.

## COUNT SEVEN

32.     Paragraphs 1-31 are incorporated herein by reference.

33.     Commerce's selection of the surrogate value for truck freight was not contemporaneous with the period of investigation and otherwise not the best available information to value the truck freight services relating to Yuzhan's purchased materials or relating to Yuzhan's export sales. Accordingly, Commerce's selection of the truck surrogate value was not supported by substantial evidence.

## COUNT EIGHT

34.     Paragraphs 1-33 are incorporated herein by reference.

35.     Commerce's selection of the surrogate value for customs brokerage was not contemporaneous with the period of investigation and otherwise not the best available information to value the brokerage services relating to Yuzhan's export sales. Accordingly, Commerce's selection of the brokerage value was not supported by substantial evidence.

## DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF

36.     For the reasons stated above, Plaintiff respectfully requests that the Court:

(a)     enter judgment in Plaintiff's favor;

(b)     declare that with respect to the issues raised in this Complaint Commerce's determinations and all related findings and conclusions are unsupported by substantial evidence on the record or are otherwise not in accordance with law;

(c)     remand these matters to Commerce for redetermination consistent with the Court's opinion; and

(d)      provide such other relief as the Court deems just and proper.


Respectfully submitted,

/s/ Jonathan M. Freed
Jonathan M. Freed
MacKensie R. Sugama
Didie Muller

**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE, Suite 500
Washington, DC  20003
Tel:  (202) 223-3760
jfreed@tradepacificlaw.com

Counsel for Plaintiff Vietnam Yuzhan Packaging
Technology Company Limited

March 28, 2026